UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WENDY WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 06-40024-FDS |
| UNIVERSITY OF MASSACHUSETTS | ) | |
| MEMORIAL MEDICAL CENTER | ) | |
| and MASSACHUSETTS NURSES | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

**SAYLOR, J.**

By Order of Reference dated January 4, 2007, the motions of defendants Massachusetts Nurses Association ("MNA") and University of Massachusetts Memorial Medical Center ("UMASS") for summary judgment were referred to Magistrate Judge Hillman for report and recommendation. On August 9, 2007, the Magistrate Judge issued a written Report and Recommendation concluding that the motions for summary judgment be allowed.

**I.     The Report and Recommendation's Findings and Conclusions**

The Report and Recommendation provides that:

Ms. Wilson asserts that the MNA breached its duty of fair representation and that UMASS breached the collective bargaining agreement between it and MNA. In a so-called "hybrid section 301" action involving breach of duty of fair representation and breach of contract claims pursuant to §301 of the LMRA, 29 U.S.C. § 185, a plaintiff must prove both that the union breached its duty of fair representation and that her employer violated the collective bargaining agreement in order to prevail on the merits against either the union or the employer. Because

of the symbiotic nature of the hybrid suit against an employer and union pursuant
to § 301, neither claim is viable if the other fails.

(Report and Recommendation at 5-6) (internal citations omitted).

As to plaintiff's claim that MNA breached its duty of fair representation, the Report and Recommendation states that:

In order to show that the Union violated its duty of fair representation, Ms. Wilson must establish that the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. A union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion. The plaintiff must establish more than mere negligence. As such, there must be a separate showing of a union breach that seriously undermines the integrity of the arbitral process.

(Report and Recommendation at 6-7) (quotations and internal citations omitted). It further states:

A union's actions will be found to be arbitrary only if the union's behavior is so far outside a wide range of reasonableness as to be irrational. A determination of bad faith requires evidence of fraud, deceitful action or dishonest conduct by the union. A union's action would be discriminatory if they are based on invidious or irrational distinctions between members.

(Report and Recommendation at 7) (quotations and internal citations omitted).

Based on that standard, the Report and Recommendation concludes that "Ms. Wilson has not made a showing that the MNA's treatment of her grievance and arbitration was not [sic] so far outside a wide range of reasonableness as to be irrational, nor is there any evidence that the MNA's conduct was fraudulent or deceitful." (Report and Recommendation at 7-8). Moreover, it specifically notes:

Certainly, the four day notification that was given to Ms. Wilson prior to the August 2, 2005 arbitration hearing was woefully inadequate, however, it is not tantamount to a determination of unfair representation. Further, although the fact of whether Ms. Marshall told Ms. Wilson that she had a weak case and "would probably lose" is in dispute, even if true, it would not raise her claim to the level

2

needed to sustain any facet of a fair representation claim.

(Report and Recommendation at 8). Based on these conclusions, the Magistrate Judge recommended that MNA's motion for summary judgment be allowed.

As to plaintiff's claim that defendant UMASS breached the collective bargaining agreement, the Report and Recommendation states:

> Ms. Wilson cannot succeed on her breach of contract claim against UMASS unless she first establishes a genuine issue of material fact concerning MNA's duty of fair representation. Because I have determined that Ms. Wilson has failed to carry this burden, her claim against UMASS necessarily fails.

(Report and Recommendation at 9). It therefore recommends that UMASS's motion for summary judgment be allowed. The Report and Recommendation further recommends that UMASS's counterclaim for conversion be allowed, but that the issue of the amount of damages should be determined by the Court after supplementation of the record and a hearing.

## II.   Plaintiff's Objections to the Report and Recommendation

Plaintiff Wilson timely filed written objections to the Report and Recommendation on August 29, 2007. Plaintiff objects to the Magistrate Judge's conclusion that she has failed to establish the existence of a genuine issue of material fact as to her claim against MNA.[1] In

---

[1] The Report and Recommendation states:

Here, Ms. Wilson argues that the MNA did not fairly represent her because, 1) it requested arbitration and by doing so, questioned her honesty; 2) it failed to notify her of the arbitration in a timely manner and did not dedicate sufficient time to preparing her case; 3) it informed Ms. Wilson that she did not have a strong case and "would probably lose"; and 4) the MNA treated her differently than other employees who were also overpaid in holiday bank time.

(Report and Recommendation at 7). Plaintiff apparently objects to the inclusion of the first enumerated reason. She states that the thrust of her argument that the MNA did not fairly represent her "was to the long delay in processing her grievance, and why the arbitration was taking so long, late notice of the arbitration hearing, and little contact with the MNA."

3

support of this objection, she points to the following numbered paragraphs from her statement of undisputed facts:

> 8. From March 19, 2005 to August, 2005, Wilson had little or no contact with the union. After being told that the union had requested arbitration of her case. (Complaint par. 10).
>
> 9. Kathy Logan, the Wilson representative at the hospital told her that she did not know why the arbitration was taking so long. In fact, the arbitration had been postponed by the union several times. MNA admits to the poor communication between it and Wendy Wilson and that it deliberately delayed Wilson's arbitration hearing for an unreasonable period of time without giving her notice and postponed the arbitration on several occasions. (See Mass. Nurses Association Statement of Undisputed Fact 22 and Memorandum p. 16).
>
> 13. On July 29, 2005, Ms. Wilson received a letter from Roland Goff notifying her that the arbitration challenging "your termination of employment was scheduled for August 2, 2005." (Tr. 16).
>
> 14. This was the first she knew of the arbitration hearing. She had not heard from Goff for 10 months. (Tr. 149).
>
> 18. On August 1, Ms. Wilson received a telephone call from Olinda Marshall who identified herself as the MNA lawyer who would be representing her at the arbitration. (Tr. 28).
>
> 21. Marshall also told her they could not get together to discuss the case until the morning of the arbitration. (Complaint par. 13 p. 28).

As an initial matter, the Court notes that the statements in paragraphs 8 and 21 are not supported by the evidence, as the only cited support for these alleged facts is Wilson's complaint. The First Circuit has indicated that in order to preclude summary judgment, "evidence manifesting

---

The Court will sustain the objection to the extent plaintiff seeks to have the language "it requested arbitration and by doing so questioned her honesty" struck from the opinion. However, as the Magistrate Judge properly considered plaintiff's remaining arguments, this objection has no bearing on the ultimate outcome of this matter.

the dispute must be 'substantial,' going beyond the allegations of the complaint." *Euromotion, Inc. v. BMW of N. Am., Inc.*, 136 F.3d 866, 869 (1st Cir. 1998) (quotation and internal citation omitted).

Paragraph 9 is likewise problematic. The cited support for this paragraph—paragraph 22 of MNA's statement of undisputed facts and page 16 of its memorandum in support of summary judgment—does not include an admission of poor communication and deliberate delay, as plaintiff suggests. Paragraph 22 of MNA's statement of undisputed facts states:

> If Wilson had told MNA or any of its representatives that she could not attend the August 2, 2005 arbitration hearing, MNA would have postponed the hearing. Marshall Affidavit at ¶ 12; Goff Affidavit at ¶ 13.

In fact, elsewhere in its statement of undisputed facts, MNA states:

> The delay in informing Wilson about the date of the August 2, 2005 arbitration hearing was not deliberate. Marshall Affidavit at ¶ 11; Williams Affidavit at ¶ 8; Goff Affidavit at ¶ 12. Other than the fact of the late notice itself, Wilson knows of no evidence that MNA deliberately withheld the date of the arbitration from her. Hickernell Affidavit at ¶ 4 (deposition at page 44:line 8 – page 45:line 8).

(Def.'s Statement of Undisputed Facts at ¶ 19). At page 16 of its memorandum in support of summary judgment, MNA states:

> Two allegations appear to remain, so far, unanswered: MNA's alleged failure to notify Wilson of the postponements and the reasons for them, and MNA's failure to attend Wilson's unemployment hearing or provide an attorney for that hearing. Facts at ¶ 31. These actions were not arbitrary. As discussed above, MNA postponed the hearing in order to give Wilson more time to consider the settlement that was still on the table. Facts at ¶ 17. This did not prejudice Wilson in any way, and is precisely the sort of decision that is left to the reasonable discretion of labor unions in their processing of grievances.

(Def.'s Mem. Supp. Summ. J. at 16).

Thus, the only valid factual issues cited by plaintiff are those contained in paragraphs 13,

5

14, and 18 of her statement of undisputed facts. These paragraphs, however, merely allege that plaintiff did not receive notice of the arbitration hearing until July 29, 2005—four days before the scheduled hearing. As noted above, the Magistrate Judge expressly considered this issue in the Report and Recommendation, and concluded that while the notice was "woefully inadequate," it was "not tantamount to a determination of unfair representation." (Report and Recommendation at 8).[2] The Court agrees with the Magistrate Judge's analysis, and plaintiff's objections will accordingly be overruled.

## III.  Conclusion

For the foregoing reasons, plaintiff's objections to the Report and Recommendation of the Magistrate Judge are overruled, except as to the matter noted in footnote 1 above, as to which the objection is sustained.

Defendant Massachusetts Nurses Association's motion for summary judgment is GRANTED. Defendant University of Massachusetts Memorial Medical Center's motion for summary judgment is GRANTED as to the claim of plaintiff Wendy Wilson, and GRANTED as to its counterclaim for conversion. As to the counterclaim, the grant of summary judgment is limited to liability only.

---

[2] The MNA lawyer's statement to Wilson that she "would probably lose," while not expressly raised in the objections themselves, is cited as an additional disputed issue of fact in the memorandum supporting plaintiff's objections. This issue was similarly addressed in the Report and Recommendation. The Court agrees with the Magistrate Judge that, even accepting plaintiff's allegation as true, this statement is insufficient to constitute conduct "so far outside a wide range of reasonableness as to be irrational."

**So Ordered.**

                                                  /s/ F. Dennis Saylor  
                                                  F. Dennis Saylor IV  
Dated:  August 31, 2007                      United States District Judge